In re Application for Exemption of Real Property by Lincoln Memorial Hospital, Inc.

[Cite as In re Exemption of Real Property, 13 Ohio Misc. 227.]

(No. 63649—Decided June 8, 1967.)

Board of Tax Appeals, Department of Taxation, State of Ohio.

*Mr. Windell F. Fisher*, for applicant.
*Mr. William W. Holmes*, for Franklin County.

APPENDIX A

This cause and matter came on to be considered by the Board of Tax Appeals upon an application for real property tax exemption for the tax year 1966 and upon an application for the remission of taxes and penalties thereon for the tax years 1960 through 1965, filed with the Board of Tax Appeals by the Lincoln Memorial Hospital, Inc., on November 17, 1966. The real property involved in the applications consists of 5.93 acres located in the city of Columbus Taxing District, Franklin County, Ohio, together with the hospital building located thereon. The parcel involved is designated as Permanent Parcel Number 1-105325 on the records of the Franklin County Auditor and the street address of said parcel of real estate is 3341 Livingston Avenue, Columbus, Ohio.

The matter was submitted to the Board of Tax Appeals upon the applications, the testimony and evidence presented to the Board of Tax Appeals at a hearing in Columbus, Ohio, on January 13, 1967, and upon the brief supplied by counsel for the applicant.

The testimony and evidence show that the *applicant, Lincoln Memorial Hospital, Inc., is a corporation organized for profit* and that it is the present title holder of the real property under consideration. (Emphasis by BTA.)

To give a clear picture of the manner in which this title was acquired, it is necessary to go back to the beginning of the organization which first fostered the idea of a hospital at this present location.

In the year 1954, Doctor A. H. Kanter and Doctor Richard L. McFarland, together with several medical associates, discussed the possibility of building and operating a hospital in the southeastern section of Columbus, Ohio, and after considerable planning, a corporation, not for profit, named "Lincoln Memorial Hospital" was formed in March of 1956 (The First Corporation).

To finance this original corporation Doctors Kanter and McFarland loaned the first nonprofit corporation $143,000.00 and other doctors loaned smaller amounts on non-interest bearing notes totalling approximately $27,-000.00.

The corporation purchased 6 acres of land on Livingston Avenue and proceeded with construction of the hospital but money ran out and local financing could not be obtained to complete and equip the hospital.

A further search was made for additional financing and finally in 1958 the Small Business Administration, an agency of the U. S. Government, agreed to lend the necessary additional money in the amount of $250,000.00, provided that the borrower would become a corporation for profit.

On March 29, 1958, the applicant herein was organized as a corporation for profit and all assets and obligations of the original corporation were transferred to and assumed by the applicant, Lincoln Memorial Hospital, Inc., (The Second Corporation). On the same date the original corporation was dissolved.

Subsequent to the formation of the new corporation (The Second Corporation), the loan was consummated by the applicant (The Second Corporation) with the Small Business Administration and the hospital was completed, equipped and opened for service to the public on October 13, 1958.

The new hospital then encountered an additional problem. According to the testimony of Mr. Leshy, approximately 60 to 70% of the hospital income is derived from the Blue Cross organization, operated in Central Ohio as the Central Hospital Service and as required by law, this organization can only deal with non-profit charitable institutions.

The applicant discussed this problem with the Small Business Administration and thereafter a new non-profit corporation, known as Lincoln Memorial Hospital (The Third Corporation) was organized to operate the hospital and to gradually absorb the applicant (The Second Corporation).

At this time, Lincoln Memorial Hospital, Inc., (The Second Corporation) owned 6 acres of land on which had been erected a sixty-bed hospital, with two operating rooms and all the personal property necessary to equip the hospital for use.

The Small Business Administration held a chattel mortgage on the personal property and a real estate mortgage on the real estate of the applicant (The Second Corporation). Arrangements for repayment by the applicant of this $250,000.00 indebtedness to the Small Business Administration, at the rate of $2,825.00 per month, were made and regular payments have been made to the Small Business Administration. These payments have been made to the Small Business Administration by Lincoln Memorial Hospital Association (The Third Corporation).

When the second corporation (the applicant) was formed, 100 shares of stock were issued to Doctors Kanter and McFarland with each doctor receiving 50 shares of stock. Shortly after the third corporation was formed, this stock (100 shares) was transferred to the third corporation and promissory notes of the third corporation were given to Doctors Kanter and McFarland in payment for the stock. These notes totaled $143,000.00, the exact amount advanced by Doctors Kanter and McFarland to the original corporation, and which indebtedness has been transferred to and assumed by the applicant (The Second Corporation).

There is no written lease agreement concerning either real estate or personal property between the applicant (The Second Corporation) and the Lincoln Memorial Hospital Association (The Third Corporation), which association operates the hospital. The applicant (The Second Corporation) performs no function in the operation of the hospital. The applicant (The Second Corporation) has no cash or checking accounts, receives no payments and makes no disbursements.

The testimony indicates that any and all payments made on behalf of or for the applicant were made by the Lincoln Memorial Hospital Association (The Third Corporation) from the funds of the Lincoln Memorial Hospital Association (The Third Corporation).

The testimony, on behalf of the applicant, also indicates that the financial statements of the applicant were prepared for only one purpose, which purpose was an an-

nual submission to the Small Business Administration of the status of the applicant. Applicant is a wholly-owned subsidiary of the Hospital Association (The Third Corporation), which Hospital Association uses the property, both real and personal, operates the hospital, pays all the bills of the hospital and of the applicant, with no payment transpiring between the association and the applicant.

The applicant has asked for exemption from taxation under Section 5709.12, Revised Code, which Revised Code Section reads in pertinent part as follows:

"* * *. Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation."

Section 5713.08, Revised Code, in pertinent part, reads as follows:

"* * *. The board shall not consider an applicant for exemption of property under such sections unless the application has attached thereto a certificate or affidavit executed by the county treasurer certifying that taxes, assessments, penalties, and interest levied and assessed against the property sought to be exempted have been paid in full to the date upon which the application for exemption is filed.

"*Taxes*, penalties, and interest *which have accrued after the property began its use for the exempt purpose, but in no case prior to the date of acquisition of the title to said property by applicant*, may be remitted by the auditor, with the consent of the board. * * *." (Emphasis by BTA.)

Section 5709.12, Revised Code, provides only for the exemption from taxation of property *"belonging to institutions* that is used exclusively for charitable purposes." Property belonging to individuals and to corporations organized for profit is obviously not exempt from taxation under the provisions of Section 5709.12, Revised Code, even if said property is used for a charitable purpose. See the 3rd and 4th branches of the syllabus in the case of *The Wehrle Foundation* v. *Evatt, Tax Commr.*, 141 Ohio St. 467, which read as follows:

"3. The word 'institutions' as used in Section 5353,

General Code, is *descriptio personae* and describes the owners or holders whose property may be exempted provided such property is used exclusively for charitable purposes.

"4. While Section 2 of Article XII of the Constitution authorizes the General Assembly to exempt *institutions* used exclusively for charitable purposes, such provision is not self-executing. The extent to which the General Assembly has acted under such authorization is to exempt property belonging to an institution provided such property is used exclusively for charitable purposes."

The clear intent of the charitable purposes portion of Section 5709.12, Revised Code, is to carry into effect the provisions of Section 2 of Article XII of the Ohio Constitution authorizing the General Assembly to provide for the exemption from taxation of property of institutions used exclusively for charitable purposes, provided said property is itself used by that charitable institution for a charitable purpose. And in the third branch of the syllabus in the *Wehrle case, supra,* the Ohio Supreme Court points out that the word "institution" as used in Section 5353, General Code (now Section 5709.12, Revised Code), is *descriptio personae.* The words "institutions used exclusively for charitable purposes" clearly mean institutions formed for charitable purposes. To find otherwise would be to distort the obvious meaning of the language of the Ohio Constitution and the language used by the Ohio Supreme Court and would provide for the unwarranted conclusion that property of a corporation organized for profit used temporarily for charitable purposes is exempt from taxation, while similar property owned by a *private person* and used in the same charitable manner would be subject to taxation. Such inequitable result was obviously not the intention of the framers of the Ohio Constitution or the members of the Ohio General Assembly in the enactment of Section 5709.12, Revised Code.

*Cleveland Osteopathic Hospital* v. *Zangerle,* 153 Ohio St. 222, reads as follows in paragraphs 2 and 3 of the syllabus:

"2. Based on the theory that all property should bear

its proportionate share of the costs of government and that it should be absolved from such obligation only for good cause, taxation is the rule and exemption the exception.

"3. One seeking to have property relieved from taxes has the burden of showing that such property comes squarely within exemption provisions of the organic law or a valid statute."

The majority opinion written by Judge Zimmerman in the *Cleveland Osteopathic Hospital case, supra*, denies tax exemption to the applicant therein as the applicant was, among other things, a corporation not for profit, but actually making a sizeable profit.

In the dissenting opinion therein Judge Taft makes the following remarks in the opening paragraphs of the dissent:

"The facts in this case as supported by the record and the findings of the Board of Tax Appeals thereon, were stated by the board as follows:

" 'The institution is incorporated not for profit.' * * *"

In the instant case we have a corporation organized for profit, owning title to a hospital building and land and, in effect, renting the hospital building and land to a non-profit corporation for sufficient money to pay off all obligations of the profit corporation so that the use which the owning institution is making of the instant real property is that of a rental unit and not that of a use exclusively for charitable purposes and that such use has been the same from 1960 through 1966.

Giving effect to the statutes, case law and facts presented by the applicant, it is the finding of the Board of Tax Appeals that during the years here in issue the real property here involved was not owned by, nor did it belong to, a charitable institution and therefore said real property is not entitled to tax exemption for the tax year 1966 under the provisions of Section 5709.12, Revised Code, and it is not entitled to tax and penalty remission for the tax years 1960 through 1965. The applications are therefore denied,

I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation this day taken with respect to the above matter.

/s/   ARTHUR W. MOORE,
*Secretary.*